Our next case for argument today is DACA 25-1387 Hogarty v. Cherry Creek School District. Counsel, please proceed when you're ready. Thank you, Your Honor, and may it please the court. I'd like to reserve three minutes for rebuttal. Patrick Hogarty was a middle school dean, asked in a virtual training breakout session with two other employees, how do you identify? The school told him to speak freely and in confidence, and that his answer wouldn't affect his employment. But the school disliked his answer about identifying as an American and preferred a different answer focused on systemic racism. So it invented a budget pretext and fired him. The district court's dismissal of Hogarty's complaint contravenes three lines of precedent. First, in Timmons, this court reiterated that a public employer's job, the employee's job duties, such that the employee is speaking on behalf of the employer. It's not enough that the speech merely relates to or stems from the job duties. Here, Hogarty's answer to how do you identify does not convey an official school message and is outside his job duties. But is it compelled speech? I mean, did they tell him he had to say something and he refused to say it? So your honor, the difference between this and your ordinary compelled speech case is that it's retaliation after the fact. So your honor is exactly right, that they didn't say in the training, here is what you must say. They just said, how do you identify? And then later they said, we're firing you because you didn't say, talk about systemic racism. You didn't acknowledge what people of color go through. So I think that is the equivalent of a, you know, of an ordinary compelled speech claim because the school had a message it wanted him to say and because he didn't say it, it fired him. Well, most of the compelled speech cases, we know what the speech, we can identify the specific message that they wanted the person to adopt. I mean, here, I have no idea what it, what you're saying they wanted, what words they wanted to come out of your client's mouth. Yes, your honor. So we identify that at paragraph 50 in the complaint and at paragraph 82, where we say that the equity director complained that Hogarty failed to acknowledge during the training, what people of color go through and admit that America is systemically racist. So, and then we say, because, because he did not make those statements, the school invented a budget pretext and fired him. Is that a conclusion or is that something that came through the pipes as far as the complaint about his performance in the training? So paragraph 50 is a factual allegation that the equity director complained to the principal these two quotes because he didn't say them, they fired him. So paragraph 50 is a, is a factual allegation taken as true at this stage. Uh, is there, oh please. Just, so why, why go down the compelled speech route? I mean, why subject yourself to maybe a higher standard? I mean, why aren't you just making a straightforward first amendment claim? Well, I, your honor, I think we have two, two separate claims and I think it's important to separate them analytically because he was fired both for the statement he did make about identifying as an American and for the statement he did not make, uh, which was the district's preferred message. And the Supreme Court has directed that, you know, when, when you force somebody to speak, that is analyzed differently from when you simply, um, you know, punish them for what they actually said. And then that's the difference between compelled speech and here viewpoint discrimination. And in Janus, the court said that those are treated differently in terms of how Pickering applies. And so that's why we think it's important to, um, understand the difference and have two separate claims, um, because under Janus, the court said it had never applied Pickering to a compelled speech claim where it would certainly require adjustment if it applied at all. But the district court here just applied Pickering without any adjustment and without mentioning Janus, even though we've alleged a compelled speech claim. Janus doesn't tell us what test to apply, right? I mean, even if we accept this as a compelled speech claim, um, you know, Janus kind of says, you know, this would maybe be a different test or it might need adjustment in the balancing section of the Pickering test, but it gives no further guidance on what we should do. And it seems like the other we get guidance, we're using Pickering. So, Your Honor, I disagree a little bit with that. In Part 5 of Janus, the court said, let's assume we apply some adjusted version of Pickering, which is what it said earlier. It would certainly require adjustment. And then in Part 5, it said, here's what the adjustment would be. We apply at least exacting scrutiny. The court reserved whether it would be exacting or strict scrutiny. But, you know, that's why we argued that the minimum required adjustment under Janus of Pickering would be to apply exacting scrutiny instead of the Pickering balancing. And I don't think any circuit has disagreed with that or refused to apply Janus in Janus's adjustment of Pickering in a compelled speech claim. This issue just hasn't come up in many circuits to this point. If you could survive Pickering and you made a claim, then you would survive exacting scrutiny, right? That's exactly right. And that's why the third line of precedent, so I talked about Timmons and Janus, the third line is Brown. And that's where, even if we assume that we're applying the Pickering balancing test, this court said that applying that test will be possible only after the parties have had the opportunity to conduct some discovery. And that's because the employer has to show specific evidence about disruption and that it actually acted based on that evidence. Here, there is no evidence about disruption, either reasonably anticipated disruption or actual disruption. And the complaint squarely alleges that the employer did not act on any such interest, but instead invented a budget pretext to cover for its, you know, ideological disagreement with Mr. Hogarty's statements in the training. And so even if we're only in Pickering land, we think that at the complaint stage, it was it was incorrect to dismiss the complaint with prejudice. In your viewpoint discrimination claim, this circuit has said Pickering applies to viewpoint discrimination, right? I don't think this court has squarely addressed the question about viewpoint discrimination. The other side's brief says that the court has not. And I think that is right. There hasn't. Well, in Brown and Duda versus Elder, we used the Garcetti-Pickering test, didn't we? So that's right. But it didn't appear that the parties there argued that viewpoint discrimination would be subject to a heightened test. And I will say that in Duda, the court said, hey, the fact that there's viewpoint discrimination means the employer is even less likely to prevail on the balancing. So Duda does at least suggest that there's a higher, a little bit higher standard that the employer has to meet when there is viewpoint discrimination. And I think that makes sense. I mean, so Justice Kagan's opinion in Childs recently said to look at mirror image rules in the First Amendment because whatever rule gets applied gets applied regardless of what the speech at issue here is. So if we imagine a generally conservative public charter school that has a similar internal training and an administrator says, you know, I identify as a privileged person and I acknowledge my history of oppression. And the school says, you're fired. We don't do that. We consider that unpatriotic. In my view, both that administrator and Mr. Hobarty would be protected by the First Amendment. The other side's view, and if you look at page eight of their response brief, they say that any statement, any speech in the training would be unprotected. So in other words, the school could have made him say anything. The school could have asked any question. The school could have imposed any restriction on speech, no matter how detached from his ordinary job duties, and the speech would have been unprotected. And I think that's inconsistent with the Supreme Court's long line of cases saying that even if you're in a required workplace, even if you're speaking privately with your employer, your speech can be protected as a citizen. So in Given, the court protected speech, you know, private in a workplace. In Rankin, the court said, did the same thing. In at a place where the employee was required to be. And so I don't think, I think the other side's wrong to say that the mere fact that this is a training, he had to go to a training, is enough to show it's part of official duties. I think that would really limit the scope of protected public employee speech far beyond what the Supreme Court has said is permissible. If we agree with you that he plausibly alleged a constitutional violation, would it be fair to say that where it's uncertain what the governing test is, that it's not clearly established? So two responses to that, Your Honor. You're exactly right to ask that question in terms of the qualified immunity to the extent that that applies to the personal capacity defendants and claims for damages. You know, we think we went even under Pickering, as we explained. So, you know, I think Pickering is clearly established. I mean, this court in McFall, which was a 2005 case said, you know, it's clearly established that a public employer may not retaliate against an employee based on his protected speech. And so I think that that would, you know, show clearly established law here. And this court has repeatedly applied that in the context of teachers, for instance, Gardetto. But even under Janus, Janus did say that Pickering would certainly require adjustment. And I think that's a pretty clear statement that at a minimum, you know, if you're a public employer going to compel speech outside of the employee's official job duties, you've got to satisfy exacting scrutiny. And so I think even there, given the Supreme Court's pretty clear statement in Janus that the standard has to be higher, that there's clearly established law. Well, where we don't have any law and the Supreme Court doesn't have any law that clearly states what the governing standard is, if you look at Leverington versus City of Colorado Springs, we said when there's uncertainty regarding the standard applied, that's enough to say that you don't have a clearly established law and the individual defendants can go out on qualified immunity. Why wouldn't that apply here? So again, Your Honor, I think under, I think Pickering is clearly established. So I think you're. Well, but you've just argued that Pickering doesn't apply here and that the Janus has called Pickering into question in a compelled speech case. So, you know, if we accept what you're telling us, which is that Janus undermines the applicability of Pickering, doesn't that make it not clearly established for purposes of qualified immunity? So I disagree, Your Honor. Our argument is that Pickering is the minimum baseline. You know, we say we went under Pickering. We say that if you only reach Pickering, we win. So the school, you know, the personal capacity defendants, there was clearly established law that at least they would have to satisfy Pickering. You know, the question then would be, do they also have to satisfy the higher standard Janus? And either way, you know, Your Honor, the district court didn't reach the question of qualified immunity. And as this court talked about in Brown, we think, you know, it hasn't been really briefed here. And so we think that's better left to the district court to decide in the first instance. But my main point is that. Well, we can look at the complaint, for example, on your municipal liability claim and see that you're arguing a policy or custom and we don't have any allegations of repetitive conduct here. We have allegations as to one person who was terminated. Can't we look at the complaint and say this doesn't state plausibly state a claim for municipal liability? So you're right that the court has the ability to do that. This the district court did not analyze these arguments. They haven't been briefed much on appeal. And I would say the complaint does allege quite squarely that the district sought to, quote, eliminate any employee who could not be successfully indoctrinated pursuant to this policy. So I think that at the complaint stage, that sufficiently alleges the existence of a the policy and the injury alleged. If there's no further questions, I'll reserve any remaining time.  Good morning and may it please the court. Jonathan Farrow on behalf of the school district and the other individual respondents. My friend writes in their opening brief, I believe that this case is about a betrayal of appellant's convictions, but it's not really about his personal viewpoint. It's about whether a public school district employer can require him to compartmentalize those convictions in the workplace when implementing district policy of a safe and effective learning environment free of discrimination. Well, he made it in response to a question about his personal views, right? In the context of an employer-required training. They told him it wouldn't affect his employment. They told him it was a safe space and they asked him what his personal views were. He wasn't talking to students. He wasn't acting as if he was representing the district in any way. I mean, I have a hard time seeing how he's speaking on behalf of the district here. Well, I mean, that's his position. Our position is that no, in fact, you can't separate this training from his job. Well, what was he saying? What was he saying? Tell me exactly what he said that was on behalf of the school. I agree. I mean, if you could be specific, I think your argument is that anything said in training because it's done in training is on behalf of the school. But doesn't it have to be on behalf of the school? Didn't he say, what did he say that you as a school district would claim was on behalf of you? So I have to stick to the complaint, right? And what he says is, he was in a breakout session where they were focusing on questions of what does it mean to be white and what experiences define whiteness? How do you identify? When asked how he identifies, he told the group he identifies as American. He loves this country. He believes it is the greatest country ever founded. And then a complaint was made during that same conversation. But we're focusing on what he said. So the complaint's later. So what he said, they said, what is your personal view? And he told them what his personal view was. I'm perplexed how this is speaking on behalf of the district. Well, again, I mean, I think... The Supreme Court told us in Kennedy versus Bramerton to be cautious of treating everything teachers and coaches say in the workplace as government speech, subject to government control. Yes, but again, they also said, in many cases, that you can't just look at the bare words themselves. You have to look at the context, content, the entire, all the factual circumstances of this. And you can't ignore, and you must, and it's conceded here, critically important. He was paid to be at this training. I want to emphasize, this was not a training at which it was voluntary. It was recommended, hey, this might enrich your life. You might grow personally if you go to this training. No, this is important for your job. This is so that you, as a dean of a middle school, when you interact with students and parents, can actually implement the district's policy, which is about these things, and as he said. Let's say we don't agree with you that he's speaking on behalf of the district. I mean, where do you go from there? I mean, he's got a claim, doesn't he? I don't think so, because, again, what is, first of all, I think, as you all pointed out in the opening, in yourself, Judge McHugh, is this compelled speech? I mean, I think that's one problem here. He says, no, he said, quote, today, it was retaliation after the fact. So, I mean, what are we talking about? What is the issue in this case? It's retaliation for what was said, and this is by an employee against an employer, right? So, we're under the Garcetti Pickering analysis, whether we call it First Amendment retaliation, whether we call it viewpoint discrimination, that's where we are. So, we have to go through all the prongs. If it's compelled speech after Janus, are we still under the same test, under the Pickering? I believe we are. I believe that's the best answer. Now, as I think both sides have said, and I think the court recognizes, it hasn't been definitively decided. The Supreme Court expressly said, we're not saying what it's going to be in Janus, because Janus was not that case, right? Janus was a union case. It was a third party, and so it was a very different kind of claim in a group of employees as opposed to individual employees trying to challenge shop fees and whether they could be mandatory or not. And I do want to address that, because I think that a key point of, and a lot of the comments that my friend made this morning about, well, Janus talked about Pickering and modifications and whatnot. I mean, there's one sentence there, and it does say that, but it doesn't really get into much detail about what those potential modifications might be. But why was the Supreme Court, in Justice Alito's opinion, the majority looking at Pickering? Because they were doing a stare decisis analysis of the Abood decision, trying to decide whether Abood was good law anymore and whether it should be followed. Because if Abood was to be followed, then the outcome of Janus was a simple case. But the majority felt that Abood was a bad decision and that it needed to be vacated. But in order to do that, the court was respectful of its precedents, and it went through all the reasons why that folks over the years, courts and other justices, et cetera, other decisions, had argued in justification for the Abood rule. And one of them was Pickering. And they said, well, no, Pickering is not a justification for this rule in this context. We're not even sure that, you know, how it might apply or how you might extend it. And that, if perhaps, I mean, maybe we'd have a more interesting discussion if that's where the opinion stopped. But it didn't. It then goes on and talks a lot about the Garcetti decision, which came out after Pickering, and it addresses the official duties prong of the now well-established test. And there are three quotes from that decision that I think are very important. They said, of course, if the speech in question is part of an official's, an employee's official duties, the employer may insist that the employee deliver any lawful message. In general, when public employees are performing their job duties, their speech may be controlled by their employer. So stopping right there, what about the mirror image argument that opposing counsel raised as far as it's, we're no longer talking about this district, but we're talking about a conservative charter school where the desired answers are 100 percent different. Would you take the same position as you are right now? In other words, is the district, is its position anything that disagrees with our ideology, interferes with our school district, and we're not putting up with it? That's not sure what it looks like. Not necessarily, Your Honor. I mean, and, you know, it's kind of an argument of convenience that I think is a little unfair for us here on a motion to dismiss stage. And when what we're really talking about in the context of the statement we made in our brief in the summary was about the speech that Mr. Hogarty is targeting in this case. Anything that Mr., that is at issue in this complaint, we believe is not protected speech. But, you know, the hypothetical I think is an interesting one. I can think of several others that are interesting as well. And my bottom line on that is that the content of, I can't say in all cases, but in this particular case, I think that it is important and it is relevant and it is a key factor because, again, it goes really to all three prongs. It goes to the official duties prong, it goes to the private concern prong, as well as, you know, the balancing test. Because are we talking about his own personal convictions or views or some broader criticism of Cherry Creek School District in the training? Are we talking about the school district just having a disagreement or an incompatibility or an incongruence between an employee's personal views and the district's views about how children need to be educated in the learning environment? Those aren't inherently incompatible. Many, many governmental employees work for governmental employers and they disagree with the government's speech on a number of issues, right? The problem in this case, and that's why I said at the very beginning the issue is not about his personal views as much as whether he can compartmentalize them in the job. Because there's no evidence that he couldn't. Well, the district, as alleged the district determined that they were concerned that he could not, based on his comments, what he said or didn't say at the training. Concern. That's the one edge of the universe to the other edge of the universe. Well, but play that out. I mean, I think the district court said it very well. I don't know that I can argue it. The court said he was also a dean of students, a role that undoubtedly is supposed to teach students how to be understanding, accepting, and caring citizens inside the school and in the community. Point of statements in this case could bear negatively on his ability to do that job effectively. In other words, if you don't believe the same thing we believe, you're fired. We need you to believe what we believe in implementing your job duties with students. Evidence he didn't. If you had, you know, I mean, if he was treating students inappropriately because of his views, that'd be one thing. But this is a private training where he is asked specifically, what are your personal views on this? Those are his personal views and he got fired for them. I mean, again, we're in a motion to dismiss, so I'm limited to the complaint, but we're talking about, I would disagree about a private training. This is a school district required training. He was paid to be there. And not only that, he's paid to take what he learns to his job. The fact that he was paid to be there. I mean, he's not interacting with students. He's at this training. During the training, he is asked, what are your personal views? So he can either lie and just parrot the message they want to hear, or he can actually answer the question truthfully and get fired for it. I mean, that's what the complaint alleges. And so my question to you is, if we think the complaint plausibly states a claim, I'm not sure if I'd say compelled speech, but do we move on to the qualified immunity issues and the municipal liability issues, or do we have to remand that? All right. I appreciate that. I want to say one other line from the order below, and then I will answer your question. I appreciate it. The court wrote, if plaintiff is unwilling to even acknowledge these important issues, what people of color go through in systemic racism, then the district surely would be justified in having doubts about his ability to effectively do his job. I don't know what else I can say about it. I've made my point. Unwilling to acknowledge. The only thing in the complaint of what he said is what we have. There's no follow-up allegation that we have. A third party goes and makes a complaint and says, this, what he said, evidences that he's unwilling to acknowledge. But there's nothing in the complaint, there's nothing that we have at this stage of the litigation where he said, I will not acknowledge that people of color have more barriers than white people. I mean, there's nothing there. It's implied, I guess, but he doesn't say that, and I can't argue with you on that. Okay. But to address your question, so, all right. So then, yes, you've got two other grounds here to affirm the decision. One is, well, at least as to the individuals, is qualified immunity. And I think, Judge McHugh, your questions were right on point with that. The issue, there's a number of complications with these free speech claims in this case, and I think if you put yourself in the position of a reasonable school official and say, well, what was clearly established law at that time? Yes, of course, the First Amendment's clearly established and free speech rights in schools, but beyond that level of generality, which is not where we stop, it's where we start, it gets very murky. And so we think that the individuals are, you have ample grounds here, and yes, we did brief it. I'm confident that we briefed sufficiently to grant and extend qualified immunity to the individuals. On municipal liability against the district, you have a ground to affirm there as well. And you pointed out a very important point, which is there's no allegation here in the complaint of other, any other instances in which someone has been disciplined or, you know, any adverse employment action based on the training, any compelled speech, period, let alone in connection with this training or viewpoint similar to Mr. Hogarty. That's fatal. I mean, again, there's not even an allegation. As we pointed out as well, you've got, you know, the tried and true policymaker issues here. I mean, the school board of education is the final policymaker on this employment decision. There's no issue or dispute that the board accepted the final separation, the employment separation. That is the non-renewal. However, there's no indication of allegation even to support a finding of adoption, adoption of discrimination or free speech retaliation, et cetera. No allegation that any of the board members were even aware of any of the speech, what he says he was, that he said or didn't say. So, yes, as my friend said, you certainly could remand it. I know sometimes the court seems to express a preference for having the district court handle that, but in this case, given the, you know, complete thin allegations and lack of allegations, and it has been briefed, I think you can decide that and resolve this case in the defendant's favor. My time is expiring. I don't know if you have any more questions. All right. Thank you for your argument. I appreciate it. Thank you. Just a few quick points, Your Honor. The other side said that Mr. Hobarty could not compartmentalize. I think that's a very unfair statement of what was going on in the training. They effectively entrapped him. They told him to come to this internal breakout session about his own views, to speak freely in confidence that nothing he said would affect his employment, and then asked him, how do you identify? And when he answered that question honestly, they said, ah, that's now our own speech. It's impermissible. It's within your job duties. Everything you say in the training is unprotectable, unprotected, despite what we just told you. So I think that's, that's, I think Your Honor's are right to view that as inconsistent with the context, content, and the motivation of the speech. On qualified immunity, I would just flag that this Court in Brown said that for the same reasons that conducting pickering balancing is usually inappropriate at the motion to dismiss stage, qualified immunity also cannot be afforded at that stage. We think the proper course there would be to reverse and remand. Again, at a minimum, we think it's clearly established that under pickering, employees, employers can't retaliate against employees for their speech as citizens, and that's what we allege here. Thank you, Your Honors. Thank you. Thank you, counsel. The case is submitted and counsel are excused.